# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PAUL DAVIS RESTORATION, INC.,

        Plaintiff,

    v.                             Case No. 14-C-1534

MATTHEW EVERETT, et al.,

        Defendants.

## DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION

Following a series of unsuccessful lawsuits with Plaintiff Paul Davis Restoration, Inc., Defendant Matthew Everett, a former franchisee of Paul Davis Restoration, Inc., began running a radio ad consisting of the following message:

> This is a business advisory. Paul Davis Restoration, Inc., a national operator of fire and water restoration franchises, is seeking a judgment of 25 percent commission on certain prior sales, which constitutes an unenforceable penalty in violation of Wisconsin state statutes and case law governing such restrictions and practices. In addition, they are seeking to impose several other terminations and conditions that arein direct violation of Wisconsin's Fair Dealership laws, those Wisconsin laws which are designed to protect all Wisconsinites. To learn more, please visit pdr-wi.com. This ad paid for by Paul Davis Restoration of NOWI.

(ECF No. 4, Ex. O.) (hereinafter, "the Radio Advertisement").

Plaintiff Paul Davis Restoration, Inc., filed a motion seeking a temporary restraining order and preliminary injunction, arguing that the Radio Advertisement was an unlawful use of its trademark (Paul Davis Restoration) as well as a false communication, in violation of the Lanham Act. The parties appeared telephonically, by counsel, for a hearing on December 11, 2014. For the

reasons given below, the motion for a preliminary injunction will be granted.[1]

To obtain a preliminary injunction, the moving party must show that it has "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago,* 651 F.3d 684, 694 (7th Cir. 2011). If this showing is made, "the court weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013). Here, the parties focused almost exclusively on the likelihood of success.

## 1. Paul Davis Trademark

Plaintiffs first argue that the Defendants' use of its trade name "Paul Davis Restoration" as the source of the ad constitutes a clear violation of Lanham Act, 15 U.S.C. § 1114(1). Plaintiff notes that Matthew Everett is a former Paul Davis Restoration Franchise owner, but that his franchise and right to use the Paul Davis Restoration trade name has been lawfully terminated. He thus has no right to use the name to identify himself or his business. The Defendants agreed to remove that reference from the Radio Advertisement roughly around the time this lawsuit was filed. They argue, therefore, that an injunction would be improper because they have already cured the problem.

Plaintiff notes, however, that given the parties' checkered and litigious history, it has no confidence that Everett will actually live up to his promise to avoid using the trademark. In some cases, it is true, voluntary cessation of offending activity can moot a claim for injunctive relief. But the question is, "[c]ould the allegedly wrongful behavior reasonably be expected to recur?"

---

[1] The history between the various parties is extensive and has been described elsewhere by this and other courts. *See, e.g.,* ECF No. 4-12.

*Already, LLC v. Nike, Inc.,* --- U.S. ---, 133 S.Ct. 721, 727 (2013). "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Service Employees Intern. Union, Local 1000,* --- U.S.---, 132 S.Ct. 2277 (2012). Here, based on the history of the litigation between the parties and the fact that even now, Plaintiff does not concede that identifying himself as a Paul Davis franchisee is improper, I conclude there is a significant likelihood that the conduct could recur absent an injunction, and accordingly I will grant the injunction to enjoin Defendants from such use in the Radio Advertisement in the future.

**2. Misleading Advertisement**

With the trademark issue mostly resolved, at the hearing the parties concentrated on the rest of the Radio Advertisement, which Paul Davis argues is false and, at a minimum, misleading. The Defendants argue, however, that an injunction would serve as an unlawful prior restraint on their speech, in violation of the First Amendment. In response to the First Amendment defense, Paul Davis argued that the speech was commercial speech, and as such it is subjected to less protection than other speech, and its content is governed by the Lanham Act.

"[I]t is well settled that false commercial speech is not protected by the First Amendment and may be banned entirely." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir.1993). "Under the Lanham Act, a court may issue an injunction to prevent the use of a 'false or misleading representation of fact' in 'commercial advertising or promotion.'" *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1323 (11th Cir. 2010) (quoting 15 U.S.C. §§ 1116, 1125(a)(1)(B)). Thus, the first question presented is whether the Defendants' ad constitutes commercial speech.

In *Jordan v. Jewel Food Stores, Inc.*, the Seventh Circuit addressed whether a supermarket's

advertisement congratulating Michael Jordan on his induction into the Basketball Hall of Fame constituted commercial or private speech. 743 F.3d 509 (7th Cir. 2014). In reversing the district court, the Seventh Circuit applied a three-part test based on the Supreme Court's decision in *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60 (1983). Under that test, which applies to speech that includes both commercial and non-commercial elements, a court may consider whether (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech. 743 F.3d at 517.

Here, the speech is undoubtedly a radio advertisement, which satisfies the first part of the analysis. Being an ad, that at least presumes an economic purpose: advertising costs money, and most private citizens do not buy ad time merely to express their personal or political views. Here, we need not speculate because the speaker is indeed a competitor of the Plaintiff and a former franchisee. The content of the Radio Advertisement addresses money judgments and alleged violations of Wisconsin's business regulations, both topics of economic import. And Everett's own emails explain that his purpose is to divert business away from Paul Davis and towards himself. In an email to Paul Davis' president, Everett wrote, "This began running today in the markets we serve. It will begin running Statewide next week. I'm certain the many Insurance Carriers that call Wisconsin home and the State Legislators who drafted the very laws PDRI is violating will find it interesting. Particularly since much of the millions in WI State work the last few years has gone PD's way..." (ECF No. 4, Ex. N.) Thus, Everett stated he was only running the Radio Advertisement in "the markets we serve," which limits the communication to areas where he has an economic interest in driving business away from Paul Davis. The threat implied by the ad is that Paul Davis' business from the state and insurance carriers will dry up (and migrate to Everett's

4

business).  Finally, the Radio Advertisement begins by describing itself as a "business advisory," an effort to make the communication sound official, rather than something based on a citizen's private views.  Thus, the ad at least satisfies two factors of the *Bolger* analysis.

The Radio Advertisement does not refer to a specific product, the second factor of the analysis, but it does refer to a specific company and the services it provides.  In fact, it names and identifies the company with great specificity as "Paul Davis Restoration, Inc., a national operator of fire and water restoration franchises."  The clear intent of the ad is to convince consumers and others to avoid doing business with a specific company, and to raise questions in the minds of those in state government who might be able to direct business Paul Davis' way.  Given the other context of the ad, it is clear that the communication consists of commercial speech, and commercial speech is subject to regulation under the Lanham Act.

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, prohibits deceptive trade practices such as false advertising and trademark infringement. Section 1125 provides for civil liability in the case of

> [a]ny person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the ... sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(A) & (B) (emphasis added).

Here, Paul Davis argues that the advertisement "misrepresents the nature . . . of [its]

5

services, or commercial activities. *Id.* I agree. Most obviously, the ad states that "Paul Davis Restoration, Inc., . . . is seeking a judgment of 25 percent commission on certain prior sales, which constitutes an unenforceable penalty in violation of Wisconsin state statutes and case law governing such restrictions and practices." In essence, the ad says that Paul Davis is breaking the law. But to the extent Paul Davis is "seeking a judgment of 25 percent commission," that is because the commission is what the arbitration panel ordered Everett to pay in its award. Evidently the Defendants believe the arbitration panel got it wrong, but the fact that questions of law may be arguable does not mean a competitor can accuse a company of illegal conduct merely for seeking to enforce a lawfully obtained arbitration award. If Paul Davis' CEO were tried and exonerated for a crime, a competitor would not be able to claim that the CEO committed criminal acts merely on the basis that it was the competitor's opinion that the jury erred. Here, the arbitration panel awarded a 25 percent commission for previous sales, and this was upheld by the Brown County Circuit Court. (ECF No. 4-12 at 11-13.) There is no reasonable way to conclude that Paul Davis is breaking any law simply by seeking to enforce the arbitration award, and so that sentence is both misleading and false.

The second relevant sentence states that "they [Paul Davis] are seeking to impose several other terminations and conditions that are in direct violation of Wisconsin's Fair Dealership laws, those Wisconsin laws which are designed to protect all Wisconsinites." Once again, this statement simply takes issue with the rulings of the arbitration panel and other courts, which refused to grant the Defendants the relief they sought. By stating that Paul Davis is in "direct violation" of Wisconsin law, the statement is not just an opinion but implies that the Plaintiff's liability is clear, when just the opposite is true.

6

At the hearing, counsel for the Defendants asserted that these points were arguable, in the fashion that many legal questions are arguable, and thus they are not demonstrably false. But such a view would allow anyone's subjective legal views to insulate them from liability simply on the basis that they disagreed (for whatever reason) with the rulings of a court. If the Defendants want to talk about arguable points of law, they are free to craft an ad expressing their disagreement with the arbitration panel, or the opinions of other courts, and to argue why they believe those courts erred. But here, the ad makes the preposterous claim that there is something illegal about attempting to enforce an arbitration award. The only conceivable purpose of such an assertion is to mislead consumers and others into thinking that the Plaintiff has engaged in illegal activity. I therefore find a strong likelihood of success on the merits.

### 3. Other Injunction Factors

The parties focused almost exclusively on the question discussed above, but it is clear that the other injunction factors tip in the Plaintiff's direction. Given the difficulty of calculating damages due to false accusations of illegal activity, the Plaintiff would suffer irreparable harm and would have no adequate remedy at law. It is also clear that there is no public interest in allowing false or misleading communications to be broadcast over the airwaves. Accordingly, I conclude that the preliminary injunction should issue.

### 4. Bond

A court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). But this does not mean that the court must order the posting of a bond in every case in which a

motion for a preliminary injunction is ordered. Where the movant has demonstrated a strong likelihood of success on the merits, a court can decline to order that a bond be posted. *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) ("Considering this as well as the strong likelihood of success on the merits which the plaintiffs have demonstrated, we find that the district court did not abuse its discretion in failing to require the plaintiffs to post a security."). Thus, despite the seemingly mandatory language of Rule 65(c), the rule has been construed to invest district courts with discretion as to the amount of security required, if any. In other words, in some cases, the court may decline to order a bond if it finds that no damages will likely result from the court's entry of the injunction. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir.2009) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." (internal quotation marks omitted)).

On the other hand, if it appears that damages flowing from an improperly granted injunction are possible, the court should err on the high side when setting the amount of security. *Mead Johnson and Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir.2000). This is because the defendant's sole source of recovery, in the event the injunction entered by the Court is later found to have been improperly granted, is the amount of the bond.

In this case, Plaintiff argues no bond should be set because of the high likelihood of success on the merits. While I do find that Plaintiffs have a high likelihood of success on the merits, I am not convinced that it is so high that no bond should be set, especially in light of the Seventh Circuit's admonition in *Mead Johnson*. Still, it is difficult on the record before me to determine what if any loss Defendants would suffer if the court's issuance of an injunction is later found to be in error. It appears that Defendants' primary goal is to injure Plaintiff's business, rather than

increase its own.  Thus, Everett states in his email to Plaintiff that though they began running the ad in the markets Defendants serve, their intent was to run the ad statewide the following week.  It is not clear from the record what markets Defendants serve and thus what losses, if any, can be anticipated if the court's ruling is later found to have been erroneous.  For this reason, the court will order a bond of $10,000 at this time, with the understanding that if Defendants believe the amount is too low, they may supplement the record and request an increase.

## 5. Conclusion

The motion for a temporary restraining order is **DENIED** as moot.  The motion for expedited discovery is **GRANTED** limited to the issues raised in the motion for a preliminary injunction and the Defendants' response.  The motion for a preliminary injunction is **GRANTED** conditioned upon Plaintiff's posting a bond in the amount of $10,000.  Defendants, their agents or anyone else working with or on behalf of the Defendants, are preliminarily enjoined and restrained, directly or indirectly, and whether alone or in concert with others from using, reproducing, disseminating, broadcasting, and/or distributing the Radio Advertisement in the form of a public advertisement or promotion.   Defendants, their agents or anyone else working with or on behalf of the Defendants, are preliminarily enjoined and restrained, directly or indirectly, and whether alone or in concert with other from using PDRI's trademarks, including PAUL DAVIS and PD PAUL DAVIS RESTORATION, or similar trademarks and trade names, including "Paul Davis Restoration of NOWI," to identify any of the Defendants, or in any other fashion intended to confuse or mislead.

**SO ORDERED** this 12th day of December, 2014.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court